IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ORRIN YESKO, *et al.*,

    *Plaintiffs*,

v.

WILLIAM FELL, JR., *et al.*,

    *Defendants*.

Civil Action No. ELH-13-3927

**MEMORANDUM OPINION**

On December 31, 2013, plaintiffs Orrin Yesko; 4900 11th Street East, LLC ("4900 LLC"); C.T.O.G., Inc.; Mazel Realty Inc.; and Shivitz Properties, Inc. filed suit against six individuals and entities.  *See* ECF 1 ("Complaint" or "Compl.").  Four defendants now remain: William Fell, Jr.; Timothy Hearn; Jacqueline Hearn; and JPL Properties, L.L.C. ("JPL").[1] Plaintiffs' allegations center on 4900 LLC, of which Mr. Yesko, Mr. Fell, and Mr. Hearn were members.  The crux of plaintiffs' allegations is that Mr. Fell and Mr. Hearn defrauded 4900 LLC by, *inter alia*, embezzling funds and making various unauthorized loans to themselves, their spouses, and other entities.

The Complaint contains seven causes of action under federal and Maryland law: (1) a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, Compl. ¶ 35; (2) civil conspiracy, *id.* ¶ 36; (3) "Breach of Fiduciary Duty," *id.* ¶ 37; (4) breach of contract, *id.* ¶ 38; (5) fraud, *id.* ¶ 39; (6) "Common Law

---

[1] On August 25, 2014, defendants Natalie Fell and Blue Heron Realty were dismissed, without prejudice.  ECF 24 (Order).

Theft/Conversion," *id.* ¶ 40; and (7) "Intentional Misrepresentation," *id.* ¶ 41.[2]  Plaintiffs request, *inter alia*, damages of $1 million, interest, and attorneys' fees.  *See* Compl. at 9.

Defendants filed a motion to dismiss (ECF 14, "Mot."), along with a supporting memorandum (ECF 14-1, "Mem.") (collectively, the "Motion").  Plaintiffs filed an opposition (ECF 15, "Opposition" or "Opp."), with exhibits (*see* ECF 15-1, 15-2), to which defendants have replied (ECF 19, "Reply").

No hearing is necessary to resolve defendants' Motion.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion.

## I. Background[3]

As noted, plaintiffs' allegations largely pertain to 4900 LLC.  That entity was incorporated in Florida on October 30, 2006, with three principals who were also 4900 LLC's members:  Yesko, Timothy Hearn, and William Fell.  Compl. ¶ 15.  Mr. Yesko "was the sole Managing Member of the LLC," *id.* ¶ 16, and "had sole authority to sign bank drafts" on behalf of 4900 LLC.  *Id.* ¶ 20.  Further, plaintiffs allege that 4900 LLC's original Operating Agreement, which is not attached to the Complaint, identified Mr. Yesko as 4900 LLC's Managing Member.  Compl. ¶ 19.

---

[2] With respect to subject matter jurisdiction, plaintiffs insist that diversity jurisdiction exists, on the ground that 4900 LLC "is a foreign Corporation and the amount in controversy is more than $75,000, exclusive of interest and costs."  *See* Compl. ¶ 2.  As discussed, *infra*, the Complaint does not establish diversity jurisdiction.  Regardless, it is apparent that subject matter jurisdiction exists as to plaintiffs' RICO claim, pursuant to 28 U.S.C. § 1331, and that this Court may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

[3] This Background is drawn from the Complaint.  At this juncture, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

Plaintiffs allege, "[o]n information and belief," that Mr. Fell and Mr. Hearn "were or are" partners or members in several other business entities, including Blue Heron Realty and JPL, both of which were named as defendants in this suit, as well as "Bird N Hand Venture's, LLC"; "C.T.O.G."; "301 North Sunset Vista"; "302 West Sunset Vista"; "Warbucks"; "RSBB, LLC"; and "Bochtab Joint Ventures." Compl. ¶ 13.

At some point following the incorporation of 4900 LLC, Mr. Hearn and Mr. Fell allegedly "began a concerted course of conduct to defraud [4900 LLC] and Mr. Yesko, embezzling funds and making illegal loans to themselves," as well as to their spouses and to other corporate entities. Compl. ¶ 17. Plaintiffs indicate that they attached to the Complaint "a detailed spreadsheet . . . showing that" Mr. Fell and Mr. Hearn "illegally signed numerous bank drafts without authorization on the account of [4900 LLC] and without Mr. Yesko's knowledge or consent." Compl. ¶ 21. However, the docket does not reflect any such spreadsheet attached to the Complaint. Regarding these bank drafts, plaintiffs assert: "There is no documentation authorizing the disbursement of those checks." *Id.*

According to plaintiffs, "[o]n information and belief, Mr. Hearn and Mr. Fell wrote checks for personal life insurance policies" for themselves, using 4900 LLC's assets. Compl. ¶ 22. Those checks, which Mr. Hearn and/or Mr. Fell "illegally signed and authorized," totaled $5,959.30. *Id.* However, 4900 LLC was not a listed beneficiary of the life insurance policies, and defendants did not repay those expenses to 4900 LLC. *Id.*

Plaintiffs also identify a number of other allegedly improper transactions. For one, "[o]n information and belief," using 4900 LLC's assets, Mr. Hearn and Mr. Fell "illegally wrote checks that were for their personal phone bills," which totaled at least $3,402.54. Compl. ¶ 23.

In addition, Mr. "Hearn and/or Fell illegally wrote bank drafts" from 4900 LLC's account to "Bird N Hand Ventures, LLC," in the amount of $5,100. *Id.* ¶ 24. They also "illegally wrote bank drafts" from 4900 LLC's account to "CTOG Limited Partnership," in the amount of $17,500, "for the repayment of loans." *Id.* ¶ 25. And, Mr. Hearn and/or Mr. Fell "illegally wrote bank drafts" from 4900 LLC's account to "301 North Sunset Vista," in the amount of $2,900. *Id.* ¶ 26. With respect to these expenditures, plaintiffs allege that no documentation or authorization existed, and that the loans were not repaid to 4900 LLC. *See* Compl. ¶¶ 23-26. More generally, plaintiffs allege that Mr. Hearn and Mr. Fell[4] have "comingled assets" of 4900 LLC "with their personal assets, and the assets of other, unrelated companies, in violation of the law." *Id.* ¶ 33.

Regarding Mr. Fell, plaintiffs also allege that he wrote several bank drafts on 4900 LLC's account, including: (1) in the amount of $400, "for a loan for [Mr.] Hearn/JPL"; (2) in the amount of $5,800, to "302 West Sunset Vistas"; (3) in the amount of $19,080.50, to "Warbucks"; (4) in the amount of $3,386.80, to "RSBB, LLC"; and (5) in the amount of $3,480, to "Bochtab Joint Ventures." Compl. ¶¶ 27-31. Mr. Fell did so, plaintiffs allege, without authorization, and he has not repaid 4900 LLC for those loans. *See id.*

Further, plaintiffs allege that a check in the amount of $55, from the entity "Bochtab Joint Ventures" and dated August 23, 2012, was submitted to the Florida Department of State, the purpose of which "was to facilitate the removal of Mr. Yesko as Managing Partner of [4900 LLC]." Compl. ¶ 32. However, "Mr. Yesko was not notified nor did he approve this change." *Id.*

---

[4] Although plaintiffs use the name "Mr. Williams" in this paragraph of the Complaint, it is apparent from the context that they are referring to William Fell.

With respect to JPL, plaintiffs allege, "[o]n information and belief," that this entity has been used by Mr. Hearn and Mr. Fell "in furtherance of many of the unlawful activities which are the subject of this complaint, including, but not limited to illegally transferring assets into" JPL and "laundering funds through" it.  Compl. ¶ 34.

Additional facts are included in the Discussion.

## II.  Legal Standards

A.  Fed. R. Civ. P. 12(b)(6)

Defendants' Motion invokes Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  But, the rule demands more than bald accusations or mere speculation.  *Id.*; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at

556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).  However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Twombly*, 550 U.S. at 555.  Moreover, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385-86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679 (citation omitted). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012).  "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'"  *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114,

1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). In considering a challenge to the adequacy of the Complaint, however, the court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. To be "integral," a

document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

B. Fed. R. Civ. P. 9(b)

As further discussed below, plaintiffs' civil RICO claim implicates the heightened pleading standard under Fed. R. Civ. P. 9(b). *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 629 (4th Cir. 2008). The rule states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

As the Fourth Circuit has said, Fed. R. Civ. P. 9(b) serves several salutary purposes:

> "First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation."

*Harrison*, 176 F.3d at 784 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990)).

By its terms, however, Rule 9(b) permits a general averment of aspects of fraud that relate to a defendant's state of mind.  It states, in part:  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'"  *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)); *accord Gadson v. Supershuttle Int'l*, 2011 WL 1231311, at *9 (D. Md. Mar. 30, 2011).  Thus, "[i]n cases involving concealment or omissions of material facts, . . . meeting Rule 9(b)'s particularity requirement will likely take a different form."  *Piotrowski v. Wells Fargo Bank, N.A.*, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (citing *Shaw*, 973 F. Supp. at 552).  And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison*, 176 F.3d at 784.

### III.  Discussion

According to defendants, plaintiffs' claims fail under Fed. R. Civ. P. 12(b)(6) and, where applicable, Fed. R. Civ. P. 9(b).  *See* Mem. at 4-14.  Plaintiffs disagree, asserting that defendants "attempt to evade responsibility for their dishonest acts," and insisting that defendants' contention that the Complaint fails to provide adequate notice is "as disingenuous as it is meritless."  Opp. at 2.

A. Plaintiffs' claims and Opposition brief

Preliminarily, I will address several notable aspects of plaintiffs' claims and allegations. First, plaintiffs fail to include separate counts in their Complaint. Instead, their claims are contained in a series of seven paragraphs found under the heading "Cause of Action." *See* Compl. ¶¶ 35-41. In addition, as defendants correctly observe, plaintiffs' causes of action found in paragraphs 35 through 41 of the Complaint "neither incorporate the . . . previously referenced factual allegations nor assert any additional detail." Mem. at 3. Of relevance to these aspects of the Complaint, in *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 598 (D. Md. 2013), Judge Grimm said:

> "Rule 10(b) provides that, '[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count.'" *Cunningham v. LeGrand*, No. 2:11–cv0142, 2011 WL 1807360, at *2 (S.D. W. Va. May 10, 2011) (quoting Fed. R. Civ. P. 10(b)). Rule 10(b) works with Rule 8(a) "'to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . .'" *Id.* (quoting *Fikes v. City of Daphne*, 79 F.3d 1079, 1082-83 (11th Cir. 1996)). Plaintiff certainly has neither pleaded these claims distinctly nor identified the specific facts supporting each claim.

Despite the deficiencies in the structuring of plaintiffs' Complaint, defendants apparently had no difficulty in discerning the legal claims that plaintiffs sought to raise. *Cf. Sterling*, 943 F. Supp. 2d at 598 (although plaintiff "neither pleaded these claims distinctly nor identified the specific facts supporting each claim," defendant apparently could discern what plaintiff claimed, and court sought to "unpack [the] count and address each claim"); *see also Madock v. McHugh*, 2011 WL 3654460, at *9 (D. Md. Aug. 18, 2011). And, because the disposition of defendants'

Motion is no different even if the Court looks past those deficiencies, I need not address them further.

As indicated, plaintiffs appended several exhibits to their Opposition.  Specifically, attached to the Opposition is an Affidavit of Orrin Yesko, dated March 21, 2014 (ECF 15-1, "Yesko Affidavit"), as well as six exhibits (ECF 15-2, labeled Exh. A through F).  The exhibits include several that, as defendants note in their Motion, were cited in but not attached to the Complaint, including the Operating Agreement (Opp. Exh. B, ECF 15-2 at 7-14) and a spreadsheet of allegedly unauthorized checks (Opp. Exh. C, ECF 15-2 at 15-19).  Among the other materials attached to the Opposition are 4900 LLC's "Articles of Organization" and related Bank of America documents (Opp. Exh. A, ECF 15-2 at 1-6); handwritten minutes from a "Special Meeting of the Members" of 4900 LLC, dated August 22, 2012 (Opp. Exh. E, ECF 15-2 at 25-26); and a "graphic breakdown" produced by a forensic accountant, purporting to trace the proceeds from the illegal transactions of Mr. Hearns and Mr. Fells (Opp. Exh. F, ECF 15-2 at 27-28).

Throughout the Opposition, plaintiffs rely on factual contentions that were absent from their Complaint.  For instance, the Opposition's background section raises new allegations that defendants "methodically falsified accounting records" and "hid and/or destroyed business records from Plaintiff Yesko in attempts to conceal their illegal activities."  Opp. at 2-3.  The Opposition also makes reference to "as yet unnamed defendant Diane Fell," *see id.* at 2, who is not referenced in the Complaint.  Plaintiffs also assert in the Opposition that Mr. Hearn and Mr. Fell "decided to illegally take over" 4900 LLC and, acting contrary to the Operating Agreement's "clear dictates," "held an impromptu 'Special Meeting of the Members' on August

22, 2012." Opp. at 3. Further, in connection with the Opposition's discussion of the RICO claim, plaintiffs raise allegations concerning a purported effort by Mr. Hearn and Mr. Fell to divert payments owed to Mazel Realty Inc. *See* Opp. at 9-10. None of these allegations was included in the Complaint.

In essence, plaintiffs have sought to supplement their Complaint by adding new allegations in connection with their Opposition. However, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). To be sure, under certain circumstances, courts have considered documents "'incorporated by reference or integral to the claim,' including documents attached to a non-moving party's opposition to a motion to dismiss, without converting it into a motion for summary judgment." *Stewart v. Morgan State University*, 2013 WL 425081, at *1 n.1 (D. Md. Feb. 1, 2013) (quoting *El-Amin v. Blom*, 2012 WL 2604213, at *1 n.1 (D. Md. July 5, 2012)). Among the exhibits attached to the Opposition, it would appear, at most, that the Operating Agreement (Exhibit B) may qualify as integral to the Complaint. Nevertheless, the new factual allegations included in the Opposition are relevant as to whether leave to amend the Complaint is warranted.

B.  Civil RICO claim

Turning to plaintiffs' civil RICO claim, defendants assert that the Complaint fails to allege any of the elements required for a RICO claim.  Mem. at 5.  In the Opposition, plaintiffs insist that "at this point" they have "met their burden of showing that the Defendants have engaged in . . . racketeering activities," such that dismissal would be inappropriate.  Opp. at 9. Defendants counter that plaintiffs "have presented this Court with no factual allegation that would turn this basic business dispute into a complex RICO enterprise even if the Court were to consider every fact set forth in the matters outside the pleadings improperly submitted in an attempt to salvage the claim."  Reply at 7.

A civil RICO action "'does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity.'"  *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted).  *See, e.g.*, *Bailey v. Atlantic Automotive Corp.*, 992 F. Supp. 2d 560, 578 (D. Md. 2014).  The Supreme Court has characterized RICO's civil penalties as "'drastic,'" as the statute permits the possible recovery of treble damages, as well as costs and attorneys' fees.  *Awappa*, 615 F.3d at 317 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233 (1989)); *see* 18 U.S.C. § 1964(c)).  As a result, the Fourth Circuit has warned that courts must

> exercise caution "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions . . . are not eclipsed or preempted."

*Awappa*, 615 F.3d at 317 (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989)) (ellipsis in *Awappa*).  In other words, RICO "is not a cause of action to be pled lightly,"

and "'RICO treatment is reserved for conduct whose scope and persistence pose a special threat to social well-being.'" *Biggs v. Eaglewood Mortgage, LLC*, 582 F. Supp. 2d 707, 714 (D. Md. 2008) (citation omitted), *aff'd*, 353 F. App'x 864 (4th Cir. 2009). *See also, e.g.*, *Bhari Information Technology System Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 502-03 (D. Md. 2013) ("The Fourth Circuit 'will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.'") (quoting *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988)).

To state a civil RICO claim, plaintiffs must allege that defendants engaged in a pattern of racketeering activity. *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (citing 18 U.S.C. §§ 1962, 1964). It is apparent, at least from the Opposition, that plaintiffs' civil RICO claim is premised on 18 U.S.C. § 1962(c). *See* Opp. at 8.[5] In order for a civil RICO claim brought under § 1962(c) to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). *See Mitchell Tracey v. First American Title Ins. Co.*, 935 F. Supp. 2d 826, 842 (D. Md. 2013); *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 472 (D. Md. 2012). "Racketeering activity" is statutorily defined as "any act which is indictable" under a number of enumerated criminal offenses, including, *inter alia*, mail fraud and wire fraud. *See* 18 U.S.C. § 1961(1)(B). A pattern

---

[5] In the Reply, defendants maintain that plaintiffs have provided them "with absolutely **no notice** regarding the specific RICO subsection being pursued in this matter." *Id.* at 7 (emphasis in original). In the Opposition, however, plaintiffs have quoted the language of § 1962(c), which they characterize as the statute's "principal substantive subsection," but not that of any other subsection. Therefore, I will construe plaintiffs' civil RICO claim as brought pursuant to 18 U.S.C. § 1962(c).

of racketeering requires at least two predicate acts. *See id.* § 1961(5). And, the enterprise's actions must affect interstate commerce. *See, e.g.*, *Sriram*, 984 F. Supp. 2d at 503.

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *See, e.g.*, *Boyle v. United States*, 556 U.S. 938, 944 (2009). In *Mitchell Tracey*, 935 F. Supp. 2d at 842, the court explained:

> An "enterprise" requires proof of three elements: (1) an ongoing organization; (2) associates functioning as a continuing unit; and (3) the enterprise is an entity "separate and apart from the pattern of activity in which it engages." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 477-78 (D. Md. 2009). "[A]n associated-in-fact enterprise is one type of enterprise defined in § 1961(4)." *United States v. Tillett*, 763 F.2d 628, 631 n.2 (4th Cir. 1985). To satisfy § 1962(c)'s "distinctiveness" requirement, the Plaintiffs must further allege that the RICO "enterprise" is distinct from the defendant "person" alleged to have violated RICO. *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 457 (E.D. Pa. 2010); *Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 346-47 (D. Md. 1998).

A RICO enterprise "need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods." *Boyle*, 556 U.S. at 948. Because "'an enterprise includes any union or group of individuals associated in fact,'" RICO extends to "'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* at 944 (quoting *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981)). Nevertheless, "'[v]ague allegations of a RICO enterprise . . . lacking any distinct existence and structure' will not survive dismissal." *Mitchell Tracy*, 935 F. Supp. 2d at 843 (citation omitted; modifications in *Mitchell Tracy*).

Where a fraud claim is asserted as the predicate act for a civil RICO violation, Rule 9(b)'s particularity requirement applies. *See, e.g.*, *Bailey*, 992 F. Supp. 2d at 584 ("A plaintiff

must plead circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).") (citations and quotation marks omitted); *Sriram*, 984 F. Supp. 2d at 505; *Hilgeford v. National Union Fire Ins. Co. of Pittsburgh*, 2009 WL 302161, at *5 (E.D. Va. Feb. 6, 2009) (Rule 9(b) applies where alleged predicate act is bank fraud); *Leung v. Law*, 387 F. Supp. 2d 105, 112 (E.D.N.Y. 2005) (same).

Paragraph 35 of the Complaint, which contains plaintiffs' civil RICO claim, states in its entirety:

> Defendants' actions are in violation of Federal Racketeering Act (RICO), 18 [U.S.C.] §§ 1962-64.  As set forth above, Defendants' conduct constitutes unfair and deceptive acts and practices in the conduct of business in the State of Maryland and across state lines.  The actions of Defendants constitute, at a minimum, fraud, theft, and conversion.

The specific statutory basis of plaintiffs' civil RICO claim is not apparent from the Complaint.  However, in the Opposition, plaintiffs invoke the text of 18 U.S.C. § 1962(c), which provides, in part:  "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  *See also supra* footnote 5.

Among other arguments, defendants assert that "absent from the Complaint are any allegations concerning the requisite RICO 'enterprise.'"  Mem. at 6.  A RICO "enterprise" is not synonymous with a "pattern of racketeering activity"; rather, the "enterprise" is "an entity separate and apart from the pattern of activity in which it engages."  *Turkette*, 452 U.S. at 583.  In *Grant*, 871 F. Supp. 2d at 473, the district court dismissed a civil RICO claim because, among other things, the plaintiff failed adequately to allege that the defendants were engaged in an

enterprise.  The court observed that the complaint "contain[ed] no factual averments regarding the relationships between or among Defendants, much less how they 'function[ed] as a continuing unit.'"  *Id.* (quoting *Delk v. ArvinMeritor, Inc.*, 179 F. Supp. 2d 615, 626-27 (W.D.N.C. 2002), *aff'd*, 40 F. App'x 775 (4th Cir. 2002)) (modification in *Grant*).

According to defendants, plaintiffs have provided "absolutely ***no notice*** regarding the type of RICO enterprise [alleged] by the Plaintiffs."  Opp. at 6 (emphasis in original).  Indeed, except for generic references to "Defendants," paragraph 35 contains no allegations that come close to identifying the nature of the any "enterprise," how it functioned, or the relationships between the participants.  *See Grant*, 871 F. Supp. 2d at 473.  And, neither the other allegations found in the Complaint nor any arguments or new facts raised in connection with the Opposition shed meaningful light on these aspects of the purported enterprise.  Therefore, plaintiffs' conclusory allegations fail to plausibly allege the existence of a RICO "enterprise."

In the Motion, defendants also argue that plaintiffs offer "no allegations setting forth a 'pattern of racketeering activity,'" because, *inter alia*, the Complaint identifies "no racketeering predicates."  Mem. at 5-6.  Plaintiffs counter that the Complaint satisfies the "pattern of racketeering activity" element "by alleging . . . that Defendants have engaged in a continuing criminal scheme dating back to at least 2011."  Opp. at 8-9.  Further, plaintiffs observe that the term "racketeering activity" is "defined to include dozens of state and federal crimes," including bank fraud, prohibited under 18 U.S.C. § 1344.  *See* Opp. at 8-9.[6]  According to plaintiffs, they

---

[6] Although plaintiffs make passing reference to mail fraud as a predicate offense, *see* Opp. at 8 (citing 18 U.S.C. § 1341), they raise no allegation or argument suggesting that defendants committed mail fraud.  Nor have plaintiffs pleaded facts that would suggest they are invoking any predicate offenses other than bank fraud.  Although many courts use "bank fraud"

adequately alleged that defendants "engaged in these types of enumerated racketeering activities, includ[ing] but not limited to engaging in the widespread forging of signatures on bank drafts, which is bank fraud." *Id.* at 9.

The bank fraud statute prohibits the execution, or attempted execution, of "a scheme or artifice" to (1) "defraud a financial institution" or (2) "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . ." 18 U.S.C. § 1344. There is no allegation that any plaintiff is a "financial institution." Nor do plaintiffs' allegations regarding 4900 LLC; C.T.O.G., Inc.; Mazel Realty Inc.; or Shivitz Properties, Inc. suggest that any of those plaintiffs qualifies as a "financial institution" for purposes of § 1344.

Plaintiffs' reliance on bank fraud as a predicate offense suffers from several flaws. For one, numerous courts, including several district courts within the Fourth Circuit, have concluded that plaintiffs that are not "a financial institution" cannot bring civil RICO claims premised on bank fraud in violation of 18 U.S.C. § 1344. *See Knisely v. National Better Living Ass'n, Inc.*, 2014 WL 4084517, at *5 (N.D.W. Va. Aug. 19, 2014) (because § 1344's "plain terms require that a financial institution was the victim of fraud," bank fraud could not be a predicate act where plaintiff "alleges only fraud committed against a person" rather than a financial institution); *Hilgeford*, 2009 WL 302161, at *6 (bank fraud could not serve as a predicate act because plaintiff was not a financial institution); *Holmes v. MBNA Am. Bank, N.A.*, 2007 WL 952017, at *1 (W.D.N.C. Mar. 27, 2007) (for § 1344 to be violated a financial institution must be

to describe violations of 18 U.S.C. § 1344, the term "financial institution fraud" is also used. *See, e.g.*, *United States v. Santos*, 553 U.S. 507, 545 (2008).

victimized; bank fraud could not be a predicate act because plaintiff was not a financial institution).

Indeed, as a general matter, "courts have consistently found that only financial institutions may claim bank fraud under 18 U.S.C. § 1344 as a predicate act for RICO purposes." *Soto v. Vanderbilt Mortgage and Finance, Inc.*, 2010 WL 3363657, at *12 (S.D. Tex. Aug. 23, 2010). *See, e.g.*, *Edmonds v. Seavey*, 2009 WL 2949757, at *6 n.6 (S.D.N.Y. Sept. 15, 2009) (explaining that "§ 1344 only prohibits 'a scheme or artifice . . . to defraud *a financial institution*,' and a RICO plaintiff who is not a financial institution under the statute lacks standing or injury to bring a RICO claim based on bank fraud as the predicate act") (quoting *Hilgeford*, 2009 WL 302161, at *6) (modification in *Edmonds*; emphasis in *Hilgeford*); *Herrick v. Liberty League Int'l*, 2008 WL 2230702, at *4 (S.D. Ohio May 28, 2008) ("Plaintiffs do not have standing to assert bank fraud as a predicate act of RICO liability. Only defrauded financial institutions have standing to assert bank fraud as a RICO predicate."); *Best Deals on TV, Inc. v. Naveed*, 2007 WL 2825652, at *10 (N.D. Cal. Sept. 26, 2007) ("The plaintiffs fail to state a claim for bank fraud. Only financial institutions have standing to allege violations of bank fraud under 18 U.S.C. § 1344 as predicate acts for RICO purposes."); *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 773 (N.D. Ill. 2005) ("The financial institution fraud allegation does not help Starfish, however, because only financial institutions have standing to allege violations of the financial institution fraud statute, 18 U.S.C. § 1344, as predicate acts for RICO purposes."); *Honorable v. Easy Life Real Estate System, Inc.*, 182 F.R.D. 553, 562 (N.D. Ill. Sept. 29, 1998) ("The [bank fraud statute, § 1344] is intended to protect financial institutions and not those who may be derivatively affected by fraud committed upon a financial institution. The plaintiffs, who

are not financial institutions, do not have standing to bring these RICO counts."). *See also Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 177 (2d Cir. 2004) ("Bank fraud is a somewhat different type of fraud than common law, securities, mail and wire fraud because the bank fraud statute was designed to protect the integrity of the federally insured banking system."); *United States v. Brandon*, 298 F.3d 307, 311 (4th Cir. 2002) ("[A] conviction under § 1344 is not supportable by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such an institution was an intended victim.") (internal quotation marks omitted).

Moreover, plaintiffs' reliance on bank fraud as a predicate offense is fundamentally at odds with the theory of liability reflected in the Complaint and further elucidated in the Opposition.  Notably, at the outset of the Opposition, plaintiffs assert that defendants, "working in concert with one another, have engaged in a course of conduct by which they systematically and intentionally defrauded [plaintiffs]."  Opp. at 2.  Even assuming, *arguendo*, that defendants committed fraud against a financial institution, which is conduct that plainly has not been alleged, plaintiffs were, at most, "derivatively affected" by such fraud.  *See Honorable*, 182 F.R.D. at 562.  As noted, plaintiffs fail to show that they are entitled to bring a civil RICO claim premised upon alleged bank fraud in violation of 18 U.S.C. § 1344.  Nor have they pleaded facts that could sustain a theory of liability based on a predicate act of bank fraud.  As a result, dismissal of plaintiffs' civil RICO claim is warranted.

A remaining question, and one that is relevant to this Court's continued exercise of jurisdiction over this dispute, is whether the civil RICO claim should be dismissed with or without prejudice.  Defendants request dismissal of the Complaint with prejudice.  Mem. at 14.

In the Opposition, plaintiffs seek leave to amend in the event the Court identifies any pleading deficiencies. *See* Opp. at 13. Defendants oppose that request, contending that leave to amend would be futile. Reply at 12. In this regard, defendants maintain that "a plain reading of the Complaint makes it clear that there are no facts whatsoever in this commonplace business dispute that could possibly support a valid RICO action giving rise to federal jurisdiction." *Id.* Because "[a] cognizable RICO claim will never gain traction in this litigation," defendants argue, it would be futile to permit plaintiffs "to further spin their wheels in [an] attempt" to state a viable RICO claim. *Id.* at 12-13.

Denial of leave to amend is appropriate where "'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards*, *supra*, 178 F.3d at 242 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). *See Anand*, *supra*, 754 F.3d at 200; *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 409 (4th Cir. 2013); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 257 (D. Md. 2013).

Significantly, plaintiffs have taken liberties in their Opposition to address various deficiencies in the Complaint, by attempting to clarify their legal claims and to supplement their factual allegations. With respect to their legal theory, the Complaint cites generally to the federal RICO statute, without identifying the basis for plaintiffs' claim. And, among other deficiencies, the Complaint fails to identify any predicate act, which is required to establish a viable civil RICO claim. However, in the Opposition, plaintiffs indicate that they are asserting a civil RICO claim under § 1962(c), based upon a predicate offense of bank fraud. And, plaintiffs

have supplemented their allegations with new factual contentions, the Yesko Affidavit, and other exhibits.  *See* ECF 15-1, 15-2.

Nevertheless, for the reasons detailed above, plaintiffs fall well short of pleading a viable civil RICO claim.  And, notably, neither the legal clarifications nor the added factual allegations raised in connection with the Opposition come close to salvaging that claim.  In my view, given these circumstances, leave to amend the civil RICO claim is unwarranted.  Accordingly, plaintiffs' civil RICO claim will be dismissed, with prejudice.

C.  Diversity and supplemental jurisdiction

Finally, I must determine whether this Court retains jurisdiction over this dispute, in light of the dismissal, with prejudice, of the civil RICO claim.  In this regard, defendants contend that, setting aside the civil RICO claim, "the remaining claims constitute, at best, a business dispute for which plaintiffs have alleged no plausible claim for relief and over which this Court lacks jurisdiction."  Reply at 2.

Under 28 U.S.C. § 1332(a)(1), the federal district courts have subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  With exceptions not applicable here, diversity jurisdiction under § 1332 "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant."  *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).  The "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction."  *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).  Notably, federal courts "have an

independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz*, 559 U.S. at 94.

Here, the Complaint does not clearly establish the citizenship of *any* party for diversity purposes, much less establish that diversity jurisdiction is proper. To the contrary, the Complaint indicates that diversity is lacking. With regard to natural persons, one's citizenship for diversity purposes depends not on residence but rather on domicile. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998). The Complaint provides only the Maryland *residence* of those parties who are natural persons: Mr. Yesko, the Hearns, and Mr. Fell. Assuming that the domicile of Mr. Yesko (a plaintiff) as well as the Hearns and Mr. Fell (defendants) is the same as their residence, complete diversity, and thus diversity jurisdiction, would be lacking on this basis alone. *See Cent. W. Virginia Energy Co.*, 636 F.3d at 103.

Moreover, it is apparent that, regardless of the domicile of Mr. Hearn and Mr. Fell, the presence of 4900 LLC as a plaintiff ensures the absence of diversity jurisdiction. As a limited liability company, the citizenship of 4900 LLC for diversity purposes "is determined by the citizenship of all of its members." *Cent. W. Virginia Energy Co.*, 636 F.3d at 103. Plaintiffs allege that Mr. Hearn and Mr. Fell were both members of 4900 LLC. *See* Compl. ¶¶ 3, 8, 10, 15. As a result, 4900 LLC necessarily will have the same citizenship as those two individual defendants. Accordingly, complete diversity is lacking. It follows that there is no subject matter jurisdiction based on diversity. *See Cent. W. Virginia Energy Co.*, 636 F.3d at 103.

Pursuant to 28 U.S.C. § 1367(c), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of

the same case or controversy . . . ."  However, under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction."   Here, the civil RICO count is subject to dismissal, leaving only claims under state law.

In *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished."   Indeed, "a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met."   *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001); *see, e.g.*, *Ramsay v. Sawyer Property Management of Maryland, LLC*, 948 F. Supp. 2d 525, 537 (D. Md. 2013) (declining to exercise supplemental jurisdiction over state claims after dismissing federal claim); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

Consistent with this authority, courts routinely decline to exercise supplemental jurisdiction over state law claims following the dismissal of a federal RICO claim on which subject matter jurisdiction had been based.   *See, e.g.*, *Sriram*, *supra*, 984 F. Supp. 2d at 505-06 (where federal RICO count was dismissed with prejudice, remaining state law claims dismissed); *Willard v. Kunda*, 2010 WL 4365569, at *5 (D. Md. Nov. 3, 2010) (declining to exercise supplemental jurisdiction over remaining state law claims upon dismissal of federal RICO

claims), *aff'd*, 432 F. App'x 259 (2011); *Walsh v. Mitchell*, 2010 WL 3719919, at *9 & n.6 (D. Md. Sept. 17, 2010) (same), *aff'd*, 427 F. App'x 282 (2011).

In my view, this same result is appropriate here.  Accordingly, plaintiffs' state law claims will be dismissed, without prejudice.

### IV.  Conclusion

For the foregoing reasons, defendants' Motion is granted, with prejudice, as to the civil RICO claim.  The remaining state law claims will be dismissed, without prejudice.  An Order implementing this ruling follows.

Date: September 5, 2014                           _____/s/_____
                                                  Ellen L. Hollander
                                                  United States District Judge